STATE OF MAINE                              SUPERIOR COURT
                                            CRIMINAL ACTION
KENNEBEC, ss.                               DOCKET NO. CR-04-110

RECEIVED AND FILED
KENNEBEC SUPERIOR COURT

2005 AUG 24 A 8: 48

MARY ANN DESJARDIN
CLERK OF COURTS

THOMAS MULKERN,

          Petitioner

     v.                                     DECISION ON PETITION
                                            FOR POST-CONVICTION
STATE OF MAINE,                             REVIEW

          Respondent


     This matter is before the court on petition for post-conviction review seeking to overturn three criminal convictions entered by plea on December 3, 2003, for class B burglary and two misdemeanors, violation of bail conditions and criminal mischief. It is petitioner's basic complaint that the assistance of counsel at time of plea was ineffective, i.e., below what might be expected from an ordinary fallible attorney. He further alleges that the ineffective representation deprived him of an understanding of his rights and, therefore, he would not have entered guilty pleas but for that ineffectiveness.

     From the age of five, petitioner has had no home save for group homes and juvenile facilities except for a period of time when he lived with his grandmother. Both unmarried parents have history of drug and other substance abuse and prison time. His siblings have criminal convictions and have served time in jails and prisons. Petitioner came under the control of the Department of Human Services at the age of 12. For a period of years he spent considerable time at the Maine Youth Center, the McDowell School, a secure residential treatment facility in Tennessee, Goodwill Hinckley, and, as a result of his desire to waive a bindover hearing in 2003, at the Maine State Prison.

The petitioner has had numerous psychological evaluations and has presented to the court the evaluation of Bruce B. Kerr, Ph.D. of October 2001, done for the Maine District Court when he was 15, and in July of 2003 at the age of 17.

The 2003 evaluation was ordered by the court as a result of a then-pending motion for bindover as a result of petitioner's criminal offenses as a juvenile. The petitioner himself requested to be bound over, raising questions as to his capacity to competently instruct his attorney to proceed in this direction. After reciting a long history of angry behavior, escapes, runaways, and the like, Dr. Kerr relates the petitioner's explanation for his desire to be turned over to the adult corrections system. Apparently, the petitioner was faced with a juvenile commitment to the Maine Youth Center until age 21 or, if bound over to the adult system, he would serve nine months in the Cumberland County Jail and get two years of adult probation with a two-year underlying suspended adult sentence and two adult felonies on his record. He understood he would do the time at the Maine Correctional Center. Mr. Mulkern advised Dr. Kerr that in his view, he would have more control over his own future under the adult system because he would have a finite sentence and would not be subject to the whims or requirements of treatment staff to determine when he would be released from a facility. He referred to the juvenile treatment system as "bs" and made it clear to the evaluator that if he was sent to a group home, "I'll run."

Dr. Kerr goes on to describe the petitioner's treatment progress and noted that the lack of treatment response in the various children's programs was "primarily a matter of his own attitude and rejection of the treatment, rather than any psychological or intellectual capacity or inability to participate in or benefit from the treatments if he so chose." Dr. Kerr described his testing results as including, among other things, the development of data suggesting, "Poor temper controls and rapid outbursts of anger

when provoked along with little concern for others at such moments. These data tend to predict poor compliance and outcome in treatment, . . ." Dr. Kerr does note that the data suggests that the petitioner has a good capacity to think logically and coherently and as capable as most persons his age of coming to reasonable conclusions about the relationships between events. However, Dr. Kerr noted that Mr. Mulkern was inclined to under-incorporate information, that is, to take inadequate account of information that should be considered concluding that, "This suggests increased risks for decisions and actions that are hasty and careless." Finally, in the context of the pending issue with the District Court at that time, Dr. Kerr opines, ". . . the court will have to consider at this juncture the distinction between bad judgment, which can be the hallmark of both adults and adolescents, and immature judgment."

This description of the report of Dr. Kerr of July 3, 2003, is relevant background to the issues before the court in this post-conviction review. At the hearing on this matter, after describing his reports and background of the petitioner, Dr. Kerr made it clear that while the petitioner had cognitive distortion in regard to his concepts of blame, Mr. Mulkern has no loss of contact with reality but makes judgments and conducts himself without considering all information available to him. Dr. Kerr notes that as a child, Mr. Mulkern had attention deficient, hyperactive disorder (ADHD) which has led him to have a diagnosable attention deficient disorder (ADD) which has led to the oppositional defiance disorder (OPD) and attention deficient disorder (ADD). Finally, Dr. Kerr relates that there is no evidence that petitioner has any brain damage or any thought disorder.

On behalf of the State, Ann LeBlanc, Ph.D., Director of the State Forensic Service, agreed with the ADHT, ADD and OPD diagnoses and described the development of ADHD into OPD resulting in an anti-social personality disorder which, rather than be

an Axis I mental disease or defect, is an Axis II personality disorder characterized by a collection of traits. She noted that Axis I conditions are treatable but Axis II are not. In laymen's terms, Dr. LeBlanc said that Mr. Mulkern has the equipment to make good decisions, but prefers not to use it.

All of this is background evidence submitted to the court to place into context the activities of Wednesday, December 1, 2003, in the District Court in Augusta, Maine. On that date, petitioner first appeared pro se where he was assisted by the Lawyer for the Day, the same counsel who was ultimately appointed as Mr. Mulkern's attorney at the time of his pleas. After having been advised by the court of his rights in entering not guilty pleas to the misdemeanors, petitioner was instructed to return on December 3 in the event he wished to proceed to a Rule 11 proceeding on the felony. At that presentation, the court was advised that the State had made an offer to Mr. Mulkern that he wanted to accept but that it would require a Rule 11 hearing, which proceeding could not be accomplished on the first. The matter was then set for December 3rd.

On December 3rd, the petitioner appeared in Augusta District Court with his appointed attorney, that attorney having been Lawyer for the Day on the 1st. At that proceeding, the petitioner executed a two-page document titled, "Acknowledgement of Rights." He advised the court that he was 18 years of age. An inquiry was made regarding waiver of grand jury. Mr. Mulkern advised the court that he had an opportunity to discuss the matters with family and that he had had sufficient time to discuss the matters with his attorney. Petitioner advised the court that he understood the waiver of indictment form and signed the document. The court then proceeded to ask a series of questions relating to the trial rights to be waived by the defendant upon his plea and the defendant provided responses which appear from the transcript to be entirely applicable. The nature of the evidence in possession of the State was described

to the court and Mr. Mulkern advised that he did not believe any information had been left out and he agreed with it. Petitioner advised the court that the evidence described was consistent with the discovery and the plea agreement was explained to the court by the District Attorney. The court then proceeded to have the prosecution submit information as to the misdemeanors and the petitioner then pled guilty to criminal mischief in multi-counts.

The court then found the pleas knowing and voluntary and imposed a sentence on the burglaries of seven years to the Department of Corrections with all but 15 months suspended, four years probation, $25 victim fees, special conditions of probation and restitution. The court then proceeded to impose concurrent sentences on the misdemeanors including a previous plea to violation of condition of release. Therefore, on the face of things, considering the desires of the petitioner, his criminal history, the psychological evaluations and the nature of the Rule 11 proceeding, all seem to be straightforward and ordinary.

Petitioner's brief presents a single question: "Did the petitioner's attorney provide ineffective assistance of counsel when he acquiesced to petitioner's request to plead guilty to a seven-year sentence after meeting with him for no more than 50 minutes and only two days after his initial appearance?"

Testifying on behalf of petitioner was an attorney who has represented Mr. Mulkern in the past for a period of about 15 months at a time when he was charged with escape from the Maine Youth Center. She told the court that Mr. Mulkern had been bound over by the District Court on account of that escape at Mr. Mulkern's own request. She described his prior history of probation failures, including one at the age of 14 and that he was bound over at the age of 17. She noted that Mr. Mulkern has a failure to appear for court appearances.

The attorney went on to opine as to her analysis of the petitioner's circumstance in this case and noted that she did not consider, under any circumstances, that Mr. Mulkern was a candidate for probation and she emphasized that under no circumstances would she let a client plead guilty to an offense with an agreed-upon underlying sentence of seven years given Mr. Mulkern's circumstances. She noted that Mr. Mulkern's attorney did not contact her while representing him in his plea negotiations but that if he had, she would have first noted the pending probation violation and that having just turned the age of 18, that seven-year sentence was inappropriate. Notwithstanding her opinion that he would be a poor candidate for probation, the attorney admitted that it would be very unusual for an 18 year-old to receive a straight sentence without probation. The attorney did not believe that the actual sentence imposed in the instant case was wrong but simply that the plea arrangement should have only taken place as the result of further investigation over time and with considerably more information supplied to Mr. Mulkern.

The circumstances of petitioner's plea are substantially agreed upon between he and his plea attorney. On December 1st, his attorney was Lawyer for the Day at the Augusta District Court and was responsible for assisting somewhere between 8 and 10 prisoners in their first appearance. Prior to discussion with the Lawyer for the Day, Mr. Mulkern had a discussion with the Assistant District Attorney who had advised him that the State was looking for a seven-year term of imprisonment. This did not set well with the petitioner who had just turned 18 years of age and was being charged with his first felony. Subsequently, a discussion took place suggesting a seven-year term but serving 18 to 24 months. Apparently, discussion between Mr. Mulkern and the Lawyer for the Day was very short but during this time, petitioner made it very clear that he wanted to plead guilty that day or the next day. While in preconviction confinement on

the probation hold, petitioner, consistent with his history, had attempted to hurt himself with a staple and had suicidal thoughts. There were some efforts made to attempt to get him into "AMHI."[1]

After the appearance on the first, petitioner testified that his attorney did not visit and he did not try to call his attorney. Mr. Mulkern states that he cannot recall seeing copies of discovery but admits that he was held in the jail under suicide conditions in which he was not allowed to have any paperwork. He does admit that he read the discovery on December 3rd on a rear bench of the District courtroom. Petitioner claims he discussed the discovery and all the matters no longer than 15 minutes with his attorney who had negotiated a deal in which Mr. Mulkern would serve 15 months. The petitioner testified that at that stage he just wanted to get it over with and that the 15 months was a good deal. Petitioner went on to testify that, "I was pretty stern that I wanted to get it over with." He further stated, "I was guilty of burglary, I didn't think the house was occupied, I went in to hide from the cops, I didn't intend to steal but I did steal."

Petitioner goes on to complain that while his attorney discussed the elements of the crimes and the judge discussed the maximum sentences, his attorney did not explain anything any further. He complains that his attorney did not call any witnesses for purposes of sentencing, there was no discussion about past experiences or mental health, his attorney did not ask why he wanted to plead guilty. He knew that his attorney did not know about his suicide attempts or about his escape from the Maine Youth Center but he agreed he did not offer such information. His attorney did not try to delay the plea proceeding in order to do further investigation and have further discussion and continues to admit that he was insistent at the time to enter the plea as

---

[1] Now Riverview Hospital.

he wanted to do so on December 1st. He thought he had a good deal, including a realization that the State dismissed six misdemeanors as part of the plea arrangement. He did not tell his attorney that he had a failed probation attempt. He said that his attorney did not discuss with him a "cap" plea agreement or an "open" plea. Petitioner testified that he understood what a cap plea agreement was but not an open plea. Petitioner admits that he did not tell his attorney he wanted to do straight time, he did not ask his attorney for a presentence evaluation, he knew he was not facing any good time and, again, he just wanted to get it over with.

The petitioner testified that he answered the District Court Judge's questions truthfully at the Rule 11 hearing, that he did not want a trial, he had never had a trial but he had a bound over hearing. He did not want to plead to the trespass charge. He did not tell his attorney about his previous attorney who had represented him at the sentence in which he received probation, the violation of which was pending in December of 2003.

There apparently was some issue raised by the District Attorney relative to uncharged conduct of a sexual nature. Petitioner advises this matter was not brought to his attention or discussed with his attorney. The petitioner testified that in the final analysis, he never told his attorney about his mental health issues, about his criminal record, about his former attorney, about his suicidal ideations but that it did not make any difference who the lawyer was, he just wanted to plead. Petitioner went on to further testify, "I would have said anything to get the deal including admitting to crimes I didn't commit."

The subject of petitioner's complaint, his appointed attorney at the time of the Rule 11 proceeding, is an experienced trial counsel who since 2001 has dealt primarily with criminal defense work, some child protective work and work on commitments to

AMHI. On December 1st, he was Lawyer for the Day where he advised the in-custody defendants of their rights and explained the charges to them and, to the extent desired, helped negotiate pleas. With regard to petitioner, he was charged with burglary, plus five misdemeanor counts, and a motion to revoke bail. He testified he was not aware of any other attorney of record with regard to Mr. Mulkern. When he approached the Assistant District Attorney, he was advised that as a result of a conversation with Mr. Mulkern, the DA understood that petitioner was satisfied with the deal that would have provided for a sentence of seven years to the Department of Corrections all suspended but two years prison time and four years probation.

On the day in question, the attorney suggested he followed his usual procedure that he first, in the open courtroom, advised all of the prisoners of their rights. He then talked with the District Attorney and determined any offers for plea agreements that were being made, then returning to the in-custody defendants individually and explained the offers by the prosecution. He also made it clear that he was the Lawyer for the Day and not necessarily the attorney for the individual defendants.

The attorney said he was advised by Mulkern that he wanted to take the seven years all but two years suspended and four-year probation plea agreement at which time the attorney advised petitioner of his rights under Rule 11. He also advised him that the District Court Judge was not in a position to do it that day but that it would have to be done on the following Wednesday.

The attorney testified he did not see or talk to the petitioner between the 1st and the 3rd but that by that time he had been appointed attorney just for Mr. Mulkern. When they arrived at the court, the attorney asked the petitioner to come to the rear courtroom seats so that he could discuss matters with him in greater privacy. He stated he did so because he was not allowed to confer with any persons in custody by taking

him from the room. The attorney said the Assistant District Attorney gave him the State's file and he read the police reports and other discovery to the petitioner and showed them to him. He testified Mr. Mulkern did not disagree with the facts as presented by the DA's file and explained why he would not plead to a number of the misdemeanors.

The attorney suggests that his conversation with petitioner lasted from approximately 12:30 to shortly after 1:00 p.m. and that the Rule 11 proceeding started about 1:45 p.m. During this time, there was further negotiation with the District Attorney. There was no discussion about substance abuse, and there was no discussion about mental health. The attorney allowed that if he had known that if the petitioner had cut himself with the staple, he would have made further inquiry with respect to mental health issues. As a result of the negotiations between the attorney and the District Attorney, the unsuspended portion of the plea agreement was reduced to 15 months.

There was no discussion about petitioner's juvenile record, the attorney did not discuss the possibility of hiring an investigator or any other discussion about a delay for purposes of further investigation but simply the insistence by the petitioner that he wanted to plead and get it done. The attorney did not recall any discussion with Mr. Mulkern about other options such as caps on the plea agreement, open pleas, etc. He, too, thought it would be extremely unusual for a court to accept a straight sentence for a young, 18 year-old person. Finally, he advised the petitioner that the State was concerned about uncharged conduct of a sexual nature and whether there would be further criminal charges initiated. The attorney indicated that discussion took place on December 1st.

Petitioner complains that while his attorney had a duty to zealously advocate for him at the time of the proceedings, his attorney failed to ask the petitioner the necessary questions to adequately represent him. He further complains that his counsel failed to request a halt in the plea proceedings in order to investigate the matter further, that counsel failed to seek a global resolution to the probation violation and new criminal charges, and finally, that "there is a reasonable probability that, but for the attorney's error, the petitioner would not have entered a guilty plea and would have insisted on going to trial." (Petitioner's Brief, section F, p. 17).

In essence, the court is faced with the fundamental issue of the proper performance of a criminal defense attorney representing a criminal defendant who has been found by a qualified psychologist to have a personality disorder causing an increased risk for decisions and actions that are hasty and careless assisting the defendant in entering a plea of guilty to a class B felony within two months of his 18th birthday, within two days of his first court appearance and after approximately one hour of consultation.

*Aldus v. State*, 2000 ME 47, 748 A.2d 463 tells us that whether the performance of an attorney falls below the standard of an ordinary fallible attorney is a question of fact. Further, before the Superior Court can vacate the petitioner's conviction, it has to find that (1) the performance of petitioner's attorney fell below that of an ordinary fallible attorney; and (2) there is a reasonable probability that, but for the attorney's error, the petitioner would not have entered a guilty plea and would have insisted on going to trial. *Aldus v. State*, 748 A.2d at 468.

*Aldus* involves an issue of deportation. It was the State's position in that case that the ordinary fallible attorney should not be expected to advise criminal defendants of a potential for deportation because deportation is a collateral consequence of a plea.

The court concluded that it was not necessary for them to address the collateral consequence doctrine to decide the case but went on to say:

> The ordinary fallible attorney is expected to advise the defendant, when that client has a question about a serious consequence of a plea agreement, that the plea need not be entered that day. The attorney should advise the defendant about the ramifications of delay and the possibility of obtaining a continuance of any matters scheduled that day so that the defendant can obtain information concerning the consequences of the plea and better evaluate her position. The choice to accept the plea agreement is left to the defendant but after advice that deferring the plea is an option . . . Geller should have made certain that Aldus wanted to proceed with the plea agreement in the face of uncertainty but why INS was looking for her, and he should have made certain that she understood that it was her choice to proceed that day or to return to court on another day as the judge had previously suggested.

*Aldus v. State,* 748 A.2d at 470.

Given the amount of time his counsel spent on his case and in advising him, counsel ignored the relevant information for the court of Mr. Mulkern's mental health issues, his age, the disposition of other matters pending with other counsel and the possibility of further investigation into the charges at State expense. All of this, he alleges, because if counsel had more appropriately delayed the offering of the plea for some later days, he could have been made aware of Dr. Kerr's diagnosis of the petitioner's propensity to make hasty and careless decisions and other matters which might have resulted in a cap plea agreement with the opportunity to argue for a reduced period of confinement.

The *Aldus* court makes it clear that the issue is one of fact and requires the hearing court to consider all of the circumstances. *Aldus* tells us that when the client has a question about a serious consequence of a plea agreement, among other things, counsel should consider obtaining information for the client concerning the consequences of the plea and allow the defendant to better evaluate his position.

In the present situation, the defendant admitted that he committed the burglary but denied the misdemeanors which were ultimately dismissed as part of the agreement. He was focused upon the period of confinement and was fully aware of the consequences of his pleas. Not only was petitioner at his young age familiar with the correctional system, at the age of 17 he deliberately put himself into the adult corrections system because, consistent with Dr. Kerr's diagnosis, efforts at treatment were of no avail and amounted to undue punishment in Mr. Mulkern's eyes. Inasmuch as petitioner made it clear to his counsel that he agreed with the evidence presented by the District Attorney at the Rule 11 proceeding, what would have been added by the presence of an investigator? What would have been added to counsel's presentation with the knowledge of the suicide attempts by Dr. Kerr's reports? What would have been added to counsel's presentation with the information of Mr. Mulkern's horrific upbringing and his disruptive behavior since an early age? Most importantly, what were the consequences of his plea which would have become known to him if the matter had been delayed and counsel had undertaken a substantial investigation?

The petitioner admits that he was fully insistent with his counsel that he wanted to plead to the burglary and get rid of some of the misdemeanors. He wanted to do it on December 1st. Unknown to counsel, there had been sufficient evaluations of the petitioner to make it clear that he was competent, that he was cognitively able to understand what was going on notwithstanding his propensity to make hasty decisions. Is it required of an ordinary fallible attorney that he prohibit his client from entering a plea agreement in the absence of lack of competency? This court thinks not. As petitioner testified, he believes things would have been different, "Now I've had two years to think about it."

This court is not satisfied that the performance by counsel in this matter is applicable to the circumstances of *Aldus v. State* and therefore the entry will be:

Petitioner's prayer for a new trial in District Court, Division VII, Division of Southern Kennebec, AUGDC-CR-2003-3168, AUGDC-CR-2003-3166, AUGDC-CR-2003-3171, and AUGDC-CR-2003-2983 is DENIED.

Dated: August 24, 2005

Donald H. Marden
Justice, Superior Court

THOMAS JOHN MULKERN
  vs
STATE OF MAINE

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2004-00110

**DOCKET RECORD**

PL. DOB: 12/01/1985
PL. ATTY: KEVIN HEFFERNAN                    State's Attorney: EVERT FOWLE
         LAW OFFICE OF KEVIN HEFFERNAN
         503 WOODFORD STREET
         PORTLAND ME 04103
         APPOINTED 06/16/2004

Filing Document: PETITION                    Major Case Type: POST CONVICTION REVIEW
Filing Date: 03/26/2004

## Charge(s)

## Docket Events:

03/26/2004 FILING DOCUMENT -  PETITION FILED ON 03/26/2004

04/20/2004 POST CONVIC. REVIEW -  REVIEW SENT FOR REVIEW ON 04/20/2004

06/02/2004 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO DOCKET ON 06/02/2004

06/02/2004 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 06/02/2004

06/10/2004 ORDER -  SPECIAL ASSIGNMENT ENTERED ON 06/10/2004
           NANCY  MILLS , SUPERIOR COURT CHIEF JUSTICE
           ASSIGNED TO DONALD MARDEN, JSC.
06/29/2004 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 06/29/2004
           DONALD H MARDEN , JUSTICE
           COPY TO PARTIES/COUNSEL
06/29/2004 Party(s):  THOMAS JOHN MULKERN
           ATTORNEY - APPOINTED ORDERED ON 06/16/2004

           Attorney:  KEVIN HEFFERNAN
10/04/2004 CASE STATUS -  CASE FILE LOCATION ON 10/04/2004

           MAILED TO JUSTICE MARDEN IN KNOX COUNTY FOR CONFERENCE.
10/21/2004 POST CONVIC. REVIEW -  PCR CONFERENCE SCHEDULED FOR 11/08/2004 @ 4:15
           DONALD H MARDEN , JUSTICE
                                                              BY TELEPHONE -
           INITIATED BY KEVIN HEFFERNAN, ESQ.
10/21/2004 POST CONVIC. REVIEW -  PCR CONFERENCE NOTICE SENT ON 10/21/2004

11/09/2004 ORDER -  TRANSCRIPT ORDER FILED ON 11/09/2004

           TRANSCRIPT REQUEST FOR RULE 11 HEARING HELD IN DISTRICT COURT FILED BY STATE, COPY SENT TO
           ELECTRONIC RECORDING    •
11/09/2004 CASE STATUS -  CASE FILE RETURNED ON 11/09/2004

11/10/2004 POST CONVIC. REVIEW -  PCR CONFERENCE HELD ON 11/08/2004

11/10/2004 POST CONVIC. REVIEW -  NOT AMENDING PCR PETITION FILED ON 11/10/2004

11/17/2004 LETTER -  FROM PARTY FILED ON 11/15/2004

    Attorney:  KEVIN HEFFERNAN
    LETTER STATING WILL NOT BE FILING A STAGE I EVALUATION REQUEST.
11/18/2004 MOTION -  MOTION TO PREPARE TRANSCRIPT FILED BY DEFENDANT ON 11/15/2004


11/18/2004 MOTION -  MOTION TO PREPARE TRANSCRIPT GRANTED ON 11/17/2004

    COPY TO PARTIES/COUNSEL
11/18/2004 ORDER -  TRANSCRIPT ORDER FILED ON 11/15/2004

    MAILED TO ELECTRONIC RECORDING
11/30/2004 POST CONVIC. REVIEW -  ORDER RESULTING FROM PCR CONF FILED ON 11/23/2004
    DONALD H MARDEN , JUSTICE
    PETITIONER HAS FIVE DAYS TO REQUEST A COPY OF THE TRANSCRIPT.  THE          PETITIONER WIL
    THEN HAVE 10 DAYS AFTER RECEIPT OF THE TRANSCRIPT TO FILE   HIS WITNESS LIST.  THE STATE
    WILL HAVE 20 DAYS FROM RECEIPT OF THE          TRANSCRIPT TO FILE ITS RESPONSE AND THE
    HEARING SCHEDULED FOR NOV. 24 IS   CONTINUED.  COPIES TO COUNSEL.
12/23/2004 OTHER FILING -  TRANSCRIPT FILED ON 12/23/2004

    TRANSCRIPT FILED FOR HEARING DATED 12/1/04
12/23/2004 OTHER FILING -  TRANSCRIPT FILED ON 12/23/2004

    TRANSCRIPT FILED FOR HEARING DATED 12/3/04
12/29/2004 OTHER FILING -  WITNESS & EXHIBIT LIST FILED BY DEFENDANT ON 12/29/2004


02/28/2005 POST CONVIC. REVIEW -  PCR CONFERENCE SCHEDULED FOR 03/11/2005 @ 1:30
    DONALD H MARDEN , JUSTICE
02/28/2005 POST CONVIC. REVIEW -  PCR CONFERENCE NOTICE SENT ON 02/28/2005


03/14/2005 POST CONVIC. REVIEW -  PCR CONFERENCE HELD ON 03/11/2005
    DONALD H MARDEN , JUSTICE
    Attorney:  KEVIN HEFFERNAN
    DA:  PAUL RUCHA
    HEARING SCHEDULED FOR JUNE 1, 2005 AT 10:00 A.M.. PETITIONER WILL FILE MEMOON CONTEMPLATED
    MEDICAL/PSYCHOLOGICAL EVIDENCE AND TESTIMONY TO BE PRESENTED NOT LATER THAN APRIL 6, 2005,
    WITH COPIES OF MEDICAL RECORDS; RESONDENT MAY SUBMIT MEMO IN RESPONSE NOT LATER THAN MAY
    2, 2005.  CONTINUED PREHEARING CONFERENCE TO BE HELD MA Y 2005.  FURTHER BRIEFING TO BE
    DETERMINED ATT  HEARING.  COPIES TO COUNSEL.
04/27/2005 MOTION -  MOTION FOR ADDITIONAL FUNDS FILED BY DEFENDANT ON 04/27/2005

04/27/2005 OTHER FILING -  MEMORANDUM OF LAW FILED ON 04/27/2005

04/27/2005 SUPPLEMENTAL FILING -  AMENDED PETITION FILED ON 04/27/2005

05/03/2005 POST CONVIC. REVIEW -  RESPONSE TO PETITION FILED ON 05/02/2005

05/03/2005 POST CONVIC. REVIEW -  PCR CONFERENCE SCHEDULED FOR 05/27/2005 @ 8:15

05/03/2005 POST CONVIC. REVIEW -  PCR CONFERENCE NOTICE SENT ON 05/03/2005

05/03/2005 OTHER FILING -  WITNESS LIST FILED BY STATE ON 05/02/2005

05/03/2005 OTHER FILING - OTHER DOCUMENT FILED ON 05/02/2005

DA: PAUL RUCHA
PRE-TRIAL MEMORANDUM BY STATE
05/09/2005 POST CONVIC. REVIEW - PCR CONFERENCE HELD ON 05/06/2005
DONALD H MARDEN , JUSTICE
Attorney: KEVIN HEFFERNAN
DA: PAUL RUCHA
CONFERENCE HELD BY TELEPHONE.
05/09/2005 POST CONVIC. REVIEW - ORDER RESULTING FROM PCR CONF FILED ON 05/06/2005

PETITIONER'S REQUEST FOR FUNDS TO BE GRANTED. 1 DAY TO BE SET FOR HEARING IN JUNE 2005.
BRIEFING AND ORAL ARGUMENT IF NECESSARY AFTER HEARING.
05/11/2005 HEARING - EVIDENTIARY HEARING SCHEDULED FOR 06/10/2005 @ 9:00
DONALD H MARDEN , JUSTICE
NOTICE TO PARTIES/COUNSEL
05/11/2005 HEARING - EVIDENTIARY HEARING NOTICE SENT ON 05/11/2005

05/17/2005 OTHER FILING - WITNESS LIST FILED BY DEFENDANT ON 05/17/2005

05/17/2005 OTHER FILING - EXHIBIT LIST FILED ON 05/17/2005

06/06/2005 WRIT - HABEAS CORPUS TO TESTIFY ISSUED ON 06/06/2005

CERTIFIED COPY TO SHERIFF DEPT.
06/20/2005 HEARING - EVIDENTIARY HEARING HELD ON 06/10/2005
DONALD H MARDEN , JUSTICE
Defendant Present in Court
06/20/2005 WRIT - HABEAS CORPUS TO TESTIFY EXECUTED ON 06/10/2005

06/20/2005 WRIT - HABEAS CORPUS TO TESTIFY REMANDED ON 06/10/2005

06/20/2005 CASE STATUS - CASE FILE LOCATION ON 06/10/2005
DONALD H MARDEN , JUSTICE
06/22/2005 POST CONVIC. REVIEW - PCR CONFERENCE HELD ON 05/27/2005
DONALD H MARDEN , JUSTICE
Attorney: KEVIN HEFFERNAN
DA: PAUL RUCHA
Defendant Present in Court
06/29/2005 BRIEF - STATES BRIEF FILED ON 06/29/2005

07/05/2005 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY PETITIONER ON 07/05/2005

07/05/2005 BRIEF - PETITIONERS BRIEF FILED ON 07/05/2005

08/25/2005 CASE STATUS - CASE FILE RETURNED ON 08/24/2005

08/25/2005 FINDING - DENIED ENTERED BY COURT ON 08/24/2005
DONALD H MARDEN , JUSTICE

A TRUE COPY
ATTEST:     _____
                    Clerk